# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew McCourt,                         :
                                         :
            Petitioner                   :
                                         :
      v.                                 : No. 1520 C.D. 2016
                                         : Submitted: February 3, 2017
Workers' Compensation Appeal             :
Board (Pathmark Stores, Inc.),           :
                                         :
            Respondent                   :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  August 2, 2017


        Matthew McCourt (Claimant) petitions for review of the August 16, 2016 order of the Workers' Compensation Appeal Board (Board) affirming the July 15, 2015 decision of a workers' compensation judge (WCJ), which relied solely on the allegations in Claimant's claim petition to award him total disability benefits for a closed period.  Claimant argues that the WCJ erred in concluding that he did not meet his burden to prove ongoing disability beyond the date of Pathmark Stores, Inc.'s (Employer) untimely answer.  Claimant also contends that the WCJ erred in placing the burden on him to establish a causal connection between his work injury and scars on his neck.  For the following reasons, we affirm in part and we reverse and remand in part.

Claimant filed a claim petition[1] on May 23, 2014, alleging that on January 5, 2014, he suffered injuries described as "lower/upper back pain, cervical spondylosis with myelopathy, facial contusions, r/o neurological injury and scarring of face" when he left Employer's store, slipped on ice, and hit a metal fence headfirst. Reproduced Record (R.R.) at 1a-4a. Claimant listed his weekly wage as $409.45, stated that the injuries prevented him from returning to work, and sought payment for total disability from January 5, 2014 and ongoing. R.R. at 3a. The petition was assigned to a WCJ, who scheduled a hearing for June 30, 2014. Employer filed an answer to the claim petition on June 26, 2014.

At the June 30, 2014 hearing, Claimant made a motion to have the matter decided on the basis of the allegations in the petition. Citing *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board (Madara)*, 423 A.2d 1125 (Pa. Cmwlth. 1981), Claimant asserted that all of the facts alleged in the claim petition were deemed admitted due to Employer's failure to file a timely answer.[2] WCJ's Findings of Fact, No. 5. The WCJ determined that the description of the injury, date of the injury, how it occurred, where it occurred, and notice were all well pled. *Id.* Additionally, the WCJ found that Claimant's disability, which

---

[1] Department of Labor and Industry, Bureau of Workers' Compensation form LIBC 362.

[2] Section 416 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §821, permits an answer to a claim petition to be filed within 20 days of service upon the employer. Additionally, it provides that "if a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the [WCJ] hearing the petition shall decide the matter on the basis of the petition and evidence presented." *Id.*

In *Yellow Freight,* we interpreted the phrase "and evidence presented" to mean evidence presented by the claimant, and we held that the untimeliness of an employer's answer barred the employer from introducing evidence of an affirmative defense to the employee's claim. 423 A.2d at 1127-28.

2

began on January 5, 2014, was well pled. *Id.* However, the WCJ determined that Claimant's allegations as to his wages, facial scars, ongoing disability, and cervical fusion surgery were not well pled and would have to be proved at a later hearing. Notes of Testimony, June 30, 2014 (N.T.) at 5. The WCJ scheduled the next hearing for March 2015 and gave Employer 21 days to submit evidence explaining why it had not filed a timely answer.

After Employer advised that no such evidence would be offered, the WCJ issued an interlocutory order on July 23, 2014. The order granted Claimant's *Yellow Freight* motion, declared that all the well pled allegations were accepted as fact, and awarded Claimant total disability benefits of $380.56 per week from January 5, 2014, to June 26, 2014, to be credited against any future compensation award. R.R. at 9a.

In his October 1, 2014 deposition, Claimant testified that when he exited Employer's store on January 5, 2014, he slid on an ice patch and hit his head on a metal fence. Claimant said that store manager Walter Suenderhalf witnessed his fall, after which he lost consciousness and was taken by ambulance to Crozer Chester Medical Center. Claimant stated that he underwent surgeries on July 8 and 9, 2014, including a cervical fusion. He testified that the surgeries greatly helped his condition, but he continues to experience significant pain and his doctors have not yet cleared him to return to work.

Employer introduced Claimant's hospital records of January 5, 2014, which reflected a primary diagnosis of alcohol intoxication. Employer also asked Claimant about statements he allegedly made indicating that he had consumed multiple beers before his shift on January 5, 2014, but Claimant said that he did not recall making these statements.

3

Claimant also testified before the WCJ at the March 2, 2015 hearing, stating that he had not yet recovered from his injuries but continues to suffer severe pain in his neck, shoulders and head; constant headaches; muscle spasms in his legs; and burning and tingling in his feet and palms. Claimant said that he continues to see doctors for physical therapy and pain treatments. Claimant did not believe that he could return to work, do any heavy lifting, or perform many manual tasks due to his injuries. However, he did not provide any expert medical testimony or other medical evidence.

Claimant identified several scars on his face, head, and neck, which he asserted were related to the work injury. He testified that the scars on the side and back of his neck and back of his head were related to his cervical surgery.

Employer introduced into evidence a statement of Claimant's wages, Claimant's deposition testimony, and Claimant's hospital records from January 5, 2014. Employer presented no witnesses or additional evidence at this hearing.[3]

In her decision of July 15, 2015, citing Claimant's demeanor during the March 2, 2015 hearing, the WCJ found that Claimant was generally not credible. Because Claimant presented no credible testimony or medical evidence, the WCJ concluded that Claimant failed to prove that he was disabled after the date Employer's untimely answer to the claim petition was filed. Based on the *Yellow Freight* ruling, and her own observations, the WCJ granted the claim petition to the extent of her interlocutory order, concluding that Claimant had met his burden of showing that he fell and sustained facial injuries on January 5, 2014, in the course

---

[3] The WCJ did not allow Employer to introduce Suenderhalf's deposition testimony to dispute that Claimant's injuries fell within the course and scope of employment, noting that evidence related to the affirmative defense was barred by the granting of the *Yellow Freight* motion. WCJ's Findings of Fact, No. 11.

4

and scope of his employment. The WCJ awarded 60 weeks of compensation at $380.56 per week for scars on Claimant's forehead, eyebrow, and nose, explaining that the scars were apparent and medical evidence was not required to prove their relationship to the work injury. However, because Claimant offered no credible testimony or other evidence, the WCJ found that Claimant failed to establish that he had surgery related to the work injury. Accordingly, the WCJ concluded that Claimant did not establish that he was entitled to compensation for ongoing disability or for scarring on his neck.

Claimant appealed to the Board. Citing *Dandenault v. Workers' Compensation Appeal Board (Philadelphia Flyers, Ltd.)*, 728 A.2d 1001 (Pa. Cmwlth. 1999), the Board noted that a failure to file a timely answer is not the equivalent of default judgment; instead, where an employer's answer is untimely, the WCJ must still determine the credibility and weight of the evidence and whether the totality of the evidence is sufficient to satisfy the claimant's burden. *Id.* at 1005. The Board reasoned that Claimant failed to present credible testimony establishing ongoing disability, or medical evidence to establish a causal connection between the work injury and the cervical surgery.[4] Accordingly, the Board affirmed the WCJ's decision.

---

[4] The Board stated that a causal relationship between the admitted work injury, cervical spondylosis with myelopathy, and cervical fusion surgery was not obvious, as an untrained layman could not make a connection between them. *See Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784 (Pa. Cmwlth. 1991).

On appeal to this Court,[5] Claimant argues that the WCJ erred in awarding total disability benefits for a closed period because the allegations in the claim petition entitled Claimant to a rebuttable presumption of ongoing disability and Employer offered no contrary evidence. Claimant also asserts that the allegations in the claim petition sufficiently pled a causal relationship between his work injury and the cervical surgeries. In response, citing *Chik-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678 (Pa. Cmwlth. 2002), and *Heraeus Electro Nite Co. v. Workmen's Compensation Appeal Board (Ulrich)*, 697 A.2d 603 (Pa. Cmwlth. 1997), Employer argues that the presumption of ongoing disability was rebutted when the WCJ rejected Claimant's testimony as not credible.

Initially, we note that in an original claim proceeding, the claimant bears the burden of proving all of the elements necessary to support an award, including the burden to establish the duration and extent of disability. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595-96 (Pa. 1993). Where the employer files an untimely answer to the claim petition without good cause, the WCJ must decide the matter on the basis of the claim petition and any additional evidence presented by the claimant. Section 416 of the Act, 77 P.S. §821; *Yellow Freight*, 423 A.2d at 1127-28. In such cases, every factual allegation in the claim petition is deemed admitted, and the employer is barred from presenting evidence in rebuttal or as affirmative defenses. *Greeley v. Workmen's*

---

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. §704.

6

*Compensation Appeal Board (Matson Lumber Co.)*, 647 A.2d 683, 685-86 (Pa. Cmwlth. 1994).

In *Greeley*, the referee[6] found that the employer failed to file a timely answer and was barred from presenting an affirmative defense to the claimant's claim petition. The referee rejected the claimant's testimony and that of the claimant's medical witness as not credible and, having done so, concluded that the claimant failed to submit competent and credible evidence necessary to support an award of compensation. The Board affirmed the referee's decision.

On further appeal in *Greeley*, we reversed the Board's decision. Relying on *Hildebrand v. Workmen's Compensation Appeal Board (Fire Department/City of Reading)*, 532 A.2d 1287 (Pa. Cmwlth. 1987),[7] we noted that Section 416 of the Act imposes no duty on a claimant to prove anything by evidence other than the allegations in the claim petition. After recognizing the referee's authority over questions of credibility and evidentiary weight, we observed that "the referee's *credibility determinations do not constitute evidence* which can be weighed against the admitted allegations in the claim petition." *Greeley*, 647 A.2d at 687 (emphasis added). Accordingly, we reversed the Board's decision, and we held that the claimant did not produce *any* evidence apart from

___

[6] At the time, workers' compensation judges were known as referees.

[7] In *Hildebrand*, the allegations in the claim petition were deemed admitted due to the employer's failure to file a timely answer. The referee found that the claimant failed to present other evidence to support his claim petition and awarded benefits based solely on the allegations in the claim petition. On appeal, this Court agreed with the Board that Section 416 of the Act does not require a claimant to present additional evidence to support the allegations in the claim petition. 532 A.2d 1290. We declined to rule on the legal sufficiency of the claimant's allegations because that issue was not raised, but we emphasized that under Section 416 of the Act, no additional evidence is necessary to meet a claimant's burden of proof.

the admitted allegations in the claim petition, which were legally sufficient to meet the claimant's burden of proof.

The employer in *Heraeus*, having filed an untimely answer, challenged the WCJ's award of ongoing disability, arguing that the use of the phrase "to present" in the claim petition was insufficient to sustain the claimant's burden to prove ongoing disability beyond the date the claim petition was signed. On appeal to this Court, we noted that the well-pled allegations specifically set forth in the claim petition did not need to be corroborated; they stood on their own as competent evidence. 697 A.2d at 608. We clarified that an employer's failure to timely file an answer to a claim petition is not the equivalent of a default judgment, and we observed that the employer could have introduced evidence to prove that events occurred, or circumstances changed, such as the extent of the claimant's disability, after the date the employer's answer was due. *Id.* We held that, because the employer failed to present any evidence concerning the claimant's disability after the date on which the employer's answer should have been filed, the WCJ was entitled to conclude, based on the only evidence of record, that the claimant's existing injuries would continue into the indefinite future. 697 A.2d at 609-10.

> Even if Employer was entitled to challenge that specific finding by the WCJ, we note that the WCJ's interpretation of the phrase "to present" is correct. There are not many other ways in the limited space on the official claim petition form for a claimant to set forth at the time the petition is filed that her disability is still continuing and is expected to do so into the indefinite future. If a petition is filed for a closed period of disability, there will be a specific end date on the petition which will precede the date the petition was filed.

8

> When a claimant files a claim petition listing that he or she is seeking a disability extending "to present," i.e., the date the petition is filed, *the claimant is obviously indicating an ongoing disability which, in the case of an unanswered or untimely answered petition, will provide the claimant with a rebuttable presumption which will sustain her burden of proof of a continuing disability from the last date the answer should have been filed throughout the pendency of the litigated matter*, thus satisfying the claimant's burden under *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* [634 A.2d 592 (Pa. 1993)]. The employer can, however, present evidence to rebut the presumption of disability after the last date its answer to the claim petition could have been timely filed.

*Heraeus,* 697 A.2d at 609 n.10 (emphasis added).

We reaffirmed these principles in *Rite Aid Corporation v. Workers' Compensation Appeal Board (Bennett)*, 709 A.2d 447 (Pa. Cmwlth. 1998). In *Rite Aid*, the claimant filed a claim petition alleging that he suffered a work-related fracture of his left foot and, as a result of increased weight bearing on his right side, an aggravation of a pre-existing disease in his right foot. The claimant stated in the claim petition that he was disabled "'from 2/28/95 to ongoing.'" 709 A.2d at 448.

The employer filed an untimely answer and did not offer an adequate excuse. Consequently, the WCJ treated all of the averments in the claim petition as admitted. The claimant also offered testimony that was consistent with those allegations. The WCJ granted the claim petition and ordered the employer to pay disability benefits into the indefinite future. The employer appealed, arguing that the WCJ erred in precluding the employer from presenting a defense to the claim petition and in relieving the claimant of the burdens to prove that his left foot problem was related to the work injury and that his disability was ongoing.

9

We first stated:

> Where an employer files a late answer without adequate
> excuse, every factual allegation asserted in the claim
> petition is admitted as true, and the employer is barred
> from presenting any affirmative defenses or challenges to
> any of the factual allegations in the claim petition.
> Additionally, the claimant does not have to corroborate
> [the] admitted allegations . . . .

*Rite Aid*, 709 A.2d at 449 (citations omitted). Citing *Heraeus,* we explained that

> in the case of an untimely answer to a claim petition in
> which a claimant alleges in his or her claim petition that
> the disability extends to the present or is ongoing, this
> allegation "will provide the claimant with a *rebuttable
> presumption* which will sustain [the claimant's] burden
> of proof of a continuing disability from the last date the
> answer should have been filed throughout the pendency
> of the litigated matter…." *Heraeus*, 697 A.2d at 609
> n.10 (emphasis added). Thus, employers who file a late
> answer to a claim petition are permitted to offer evidence
> to rebut this presumption.

*Rite Aid*, 709 A.2d at 450. The employer in *Rite Aid* never sought to rebut the presumption that the claimant remained disabled by presenting evidence concerning the duration of the claimant's disability, and we held that the employer's failure to do so constituted a waiver of that issue on appeal.

Subsequently, in *Chik-Fil-A*, we again held that the employer's failure to file a timely answer barred it from asserting affirmative defenses to the allegations in the claim petition, but we clarified that

> Claimant is only entitled to a rebuttable presumption that
> her disability continues after the last date that Employer
> should have filed an answer. *Heraeus*. Employer is not
> barred, therefore, from presenting evidence itself, or
> attempting to discredit the Claimant's evidence, to rebut

10

the presumption that Claimant's disability continues into the indefinite future. *Id.*

*Chik-Fil-A*, 792 A.2d at 689. In *Chik-Fil-A*, the employer did offer evidence that work was available within the claimant's restrictions, and we held that the WCJ erred in failing to render findings addressing that evidence.

In light of the above decisions, we conclude that the WCJ erred in failing to recognize that Claimant was entitled to a rebuttable presumption of ongoing disability based on the admitted allegations in his claim petition. *Chik-Fil-A; Rite Aid; Heraeus.* The WCJ's rejection of Claimant's testimony as not credible is not evidence. *Greeley*, 647 A.2d at 687. Because Employer presented no evidence to rebut the presumption of ongoing disability, the WCJ erred in limiting the award of compensation to a closed period.[8] *Rite Aid.*

Claimant next argues that the WCJ erred in concluding that the allegations in the claim petition are not sufficient to establish a causal relationship between the scars on his neck and the accepted cervical injury. Relying on *Gens v. Workmen's Compensation Appeal Board (Rehabilitation Hospital of Mechanicsburg/Aetna Life and Casualty)*, 631 A.2d 804 (Pa. Cmwlth. 1993), Claimant asserts that the cervical fusion surgery and the resultant scarring were obvious results of the cervical spondylosis injury admitted pursuant to *Yellow Freight* and that Employer bore the burden of proving that the cervical fusion surgeries were unreasonable or unnecessary.

---

[8] We note that at the final hearing on Monday, March 2, 2015, Employer stated that it had scheduled a deposition of a Dr. Fras for Friday, March 6, 2015. R.R. at 13a. Claimant objected on the basis of timeliness, asserting that the final hearing had been scheduled months earlier, and the WCJ sustained the objection. R.R. at 14a-15a. Employer does not complain about that ruling on appeal.

11

As previously noted, the claim petition describes Claimant's injuries as "lower/upper back pain, cervical spondylosis with myelopathy, facial contusions, r/o neurological injury and scarring of face." R.R. at 2a. Notably, the claim petition does not allege either scarring of the neck or surgery, nor does it seek compensation for any disfigurement (scars) or for medical bills related to cervical surgery. Therefore, the WCJ properly found that the neck scars for which Claimant seeks compensation are not well pled and are not acknowledged by Employer under *Yellow Freight*.

> The WCJ found:
>
> Claimant's counsel submitted photographs in support of Claimant's claim for disfigurement. Photograph 1 and Photograph 5 . . . are the photographs [of] the side of Claimant's neck and the back of his neck. Claimant testified that these were related to the surgery he had. There is no evidence that Claimant had surgery related to this injury other than his statements. This Judge finds his testimony insufficient to sustain Claimant's burden [to prove] that his surgery was related to his fall on January 5, 2015. Thus, since no evidence was presented by Claimant, there is no evidence tying these scars to his work injury. No award is made for the scars on Claimant's side and back of his neck.

WCJ's Findings of Fact, No. 15. Because Claimant did not plead or otherwise seek compensation related to cervical surgery or neck scars in the claim petition and offered no credible testimony or other evidence related to that claim, we agree that the record does not support an award of compensation for neck scars.

Nevertheless, relying on *Gens*, Claimant contends that because the neck scars involve the same *body part* as the admitted injury, cervical spondylosis with myelopathy, he does not bear the burden to prove a causal relationship between the work injury, the surgery, and the scars on his neck. We disagree.

12

In *Gens*, the claimant was injured in an automobile accident in 1984. She subsequently sustained work injuries on June 7 and November 26, 1985, during the course of her employment as a registered nurse. A referee found that the claimant's work injuries aggravated her pre-existing back condition originating from the automobile accident and awarded her benefits. The referee's decision was affirmed by the Board and this Court. Thereafter, the claimant filed petitions seeking payment of medical bills incurred since June 7, 1985. In response, the employer also filed petitions alleging that some of the medical treatment that the claimant planned to undergo was not causally related to the work injury. The referee consolidated the petitions and found in the claimant's favor. The Board reversed, and the claimant appealed to this Court.

The issue presented in *Gens* was whether the claimant, "having already proven a causal connection between her work injuries and her disability, was subsequently required to prove a causal connection between her work injury and her medical bills." 631 A.2d at 805. We began our analysis by noting that "[t]here is no dispute that [the claimant] has incurred medical bills for the treatment of her back condition," and that the claimant's no-fault insurance carrier at the time of her 1984 automobile accident paid her medical expenses from the time of the car accident up to the time of this Court's 1990 decision on the claim petition. *Id.* and n.4. We further explained that the "treatment at issue involves the claimant's back condition, which has already been adjudicated to have been compensable, not a non-obvious symptom or disability arising from the back condition. . . . it is obvious that in this case the medical expenses are for the back condition and the back condition is the compensable injury." 631 A.2d at 806-807.

13

Finally, we rejected the employer's argument that the causal connection between the medical expenses and the work injuries was not obvious and that the medical expenses might instead be related to the original automobile accident or other non-employment factors, stating that "[t]his argument is essentially a relitigation of the claim petition proceedings." *Id.* We concluded that an analysis requiring a claimant who has already proven that her back condition was causally related to her work injuries "to subsequently prove that the medical expenses *for treatment of that back condition* are causally related to her work injuries" would lead to an inequitable result. *Id.* at 807 (emphasis added). Accordingly, we held that it was the employer's burden in that case to prove that any bills associated with the claimant's back condition were unreasonable or unnecessary.

Our analysis in *Gens* rested on the demonstrated connection between the claimant's work injury and the medical bills for treatment of that injury In contrast to the facts in *Gens*, in this case there has been no prior adjudication or evidence presented to show that the medical treatment at issue, the cervical fusion surgery, is related to the work injury, cervical spondylosis with myelopathy. Claimant did not allege or seek compensation for cervical surgery or neck scars in the claim petition, and he offered no credible testimony or other evidence to establish a causal relationship between his work injury and the neck scars. Indeed, as the WCJ noted, Claimant offered no credible evidence that he underwent surgery. In sum, because Claimant offered neither allegations nor evidence on this issue, the material facts in *Gens* are distinguishable, and Claimant's reliance on its holding is misplaced.

14

Accordingly, we reverse that part of the Board's order affirming the WCJ decision to limit the award of wage loss compensation to a closed period, and we affirm the Board's order in all other respects. We remand this matter to the Board for further proceedings consistent with this opinion.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew McCourt,                          :
                                          :
                       Petitioner         :
                                          :
              v.                          : No. 1520 C.D. 2016
                                          :
Workers' Compensation Appeal              :
Board (Pathmark Stores, Inc.),            :
                                          :
                       Respondent         :


                          O R D E R


       AND NOW, this 2nd day of August, 2017, the order of the Workers'
Compensation Appeal Board (Board), dated August 16, 2016, is reversed in part
and affirmed in part, and this matter is remanded to the Board for further
proceedings in accordance with the foregoing opinion.


       Jurisdiction relinquished.


                                    _____
                                    MICHAEL H. WOJCIK, Judge